UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SANJAY TRIPATHY,

Plaintiff,

v.

CAPTAIN LOCKWOOD, *et al.*,

Defendants.

DECISION AND ORDER

19-CV-6614-MJP

---

## INTRODUCTION

**Pedersen, M.J.** On August 21, 2019, plaintiff Sanjay Tripathy ("Plaintiff"), proceeding *pro se*, commenced this civil rights action against numerous defendants alleging that a laundry policy at Gowanda Correctional Facility violated his religious beliefs as a Hindu. (Compl., ECF No. 1.) He thereafter filed two amended complaints asserting similar claims, but in which he either limited the scope of the defendants or added defendants, the latter of which is the case with the operative complaint filed on January 19, 2023. (2d Am. Compl., ECF No. 132.)

Presently before the Court is Defendants' motion to dismiss Plaintiff's second amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1)[1] and (6)

---

[1] In their notice of motion, Defendants indicate that they are moving to dismiss the second amended complaint pursuant to "Rule 12(b)(2) and (6) and Rule 12(c)." (Not. of Mot., *(continued)*

and 12(c)². (Defs.' Not. of Mot., Mar. 24, 2023, ECF No. 138.) For the reasons stated

below the Court grants in part and denies in part Defendants' motion to dismiss.

## JURISDICTION

On December 15, 2023, the parties jointly and voluntarily consented to

Magistrate Jurisdiction and the Honorable Frank P. Geraci, Jr. referred this case to

the undersigned to conduct all proceedings and order the entry of a final judgment in

---

ECF No. 138.) However, in their memorandum of law, Defendants seek dismissal under Rule 12(b)(1) rather than 12(b)(2). (Defs.' Mem. of Law at 7, ECF No. 138-2.) The Court, therefore, construes Defendants' motion as one seeking dismissal under 12(b)(1) instead of 12(b)(2), as well as under Rules 12(b)(6) and 12(c).

² Rule 12(c) of the Federal Rules of Civil Procedure provides that "[*a]fter the pleadings are closed*—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c) (emphasis added). In place of answering Plaintiff's second amended complaint, Defendants filed the present motion to dismiss. In other words, since Defendants never filed an answer, the pleadings were never closed for purposes of Rule 12(c) and Defendants cannot seek dismissal of Plaintiff's second amended complaint under that Rule. *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005) provides:

> We conclude that Doe's motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) before any answer was filed . . . was procedurally premature and should have been denied. The rule provides in relevant part: "*After the pleadings are closed* but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Rule 7, entitled "Pleadings Allowed," defines what filings are considered pleadings and declares which pleadings shall be filed with the district court. It provides:

> There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer if a [ ] third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.

*Id*. (quoting Fed. R. Civ. P. 7(a)).

Based upon the forgoing, the Court denies Defendants' motion as premature to the extent it seeks judgment on the pleadings under Fed. R. Civ. P. 12(c).

accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Notice, Consent, and Reference of a Civil Action to a Magistrate Judge, ECF No. 162.)

## PROCEDURAL HISTORY

On November 25, 2019, the Court dismissed with prejudice certain of Plaintiff's claims alleged in his initial complaint, some with leave to file an amended complaint, and allowed others to proceed to service. (Decision and Order, Nov. 22, 2019, ECF No. 3; Compl., Aug. 21, 2019, ECF No. 1.) On December 9, 2019, Plaintiff filed an amended complaint pursuant to the Court's Order against Captain Lockwood, Reverand Harris, Superintendent Susan R. Kickbush, and the Department of Corrections and Community Supervision of New York State ("DOCCS"). (Am. Compl. at 1, ECF No. 4.).[3]

In liberally construing Plaintiff's amended complaint, the Court determined that it adequately stated the following claims, which were allowed to proceed to service: (1) First Amendment claim against Defendants Lockwood, Harris, and Kickbush, in their individual capacities; (2) Religious Land Use and Institutionalized Persons Act claim ("RLUIPA") against DOCCS; and (3) claim for prospective injunctive relief under the First Amendment against Lockwood, Harris, and Kickbush in their official capacities. (Order, Feb. 24, 2020, ECF No. 7.) Defendants filed their answer on April 20, 2020. (Defs.' Answer, ECF No. 9.) On November 25,

---

[3] References to page numbers are to those automatically assigned when the document was electronically filed on CM/ECF and can be found in the upper right-hand corner of the document.

2020, Plaintiff moved to add Acting Superintendent Andrea N. Schneider as a defendant after Defendant Superintendent Susan R. Kickbush retired and the Court granted that motion. (Mot. to Add Parties, ECF No. 25; Decision and Order, Dec. 18, 2020, ECF No. 29.)

On January 19, 2023, Plaintiff filed a second amended complaint in which he added seven new defendants, all but one of whom work(ed) at either Fishkill Correctional Facility or Collins Correctional Facility. (2d Am. Compl. at 3, ECF No. 132.) In particular, with respect to Fishkill, Plaintiff added defendants Sharon Frost, Father George J. Dash, and Superintendent Edward Burnett ("Fishkill Defendants"). (*Id.*) With respect to Collins, Plaintiff added Reverend Joel L. Terragnoli, Richard Moffit, and Superintendent Leanne Latona ("Collins Defendants"). (*Id.*) Finally, Plaintiff added Defendant Nancy K. Fernandez ("Fernandez"), Director of Ministerial Services at DOCCS. (*Id.*)

In his second amended complaint, Plaintiff alleges similar claims to those asserted previously against the defendants associated with Gowanda Correctional Facility, but also adds three new claims (numbers 3, 4, and 5, below) as follows: (1) a violation of 42 U.S.C. § 1983, First Amendment (freedom of religion) against all Defendants in their official and individual capacities; (2) RLUIPA claim against all Defendants in their official capacities and against all Defendants but DOCCS in their individual capacities; (3) violations of 42 U.S.C.§ 1983 and § 1985—conspiracy to deprive Plaintiff of his religious rights against all Defendants in their official and individual capacities; (4) supplemental jurisdiction for violation of Article 1, § 3 of the

4

New York State Constitution regarding "Freedom of Worship, Religious Liberty" against all Defendants in their official and individual capacities; (5) supplemental jurisdiction for violation of Article 1, § 19 of the New York State Constitution regarding "Environmental Rights (Each person shall have a right to clean air and water, and a healthful environment)" against all Defendants in their official and individual capacities. (2d Am. Compl. at 7.) In response, Defendants filed the present motion in which they seek to dismiss each claim contained in Plaintiff's second amended complaint.

### FACTUAL BACKGROUND

A New York City jury convicted Plaintiff of a criminal sexual act in the first degree, sexual abuse in the first degree, and related offenses in May 2018. The Court sentenced Plaintiff to seven years of imprisonment. The First Department affirmed his conviction. *See generally, People v. Tripathy*, 187 A.D.3d 515 (1st Dep't 2020), *lv. denied*, 36 N.Y.3d 1101 (2021).

The following facts are taken from Plaintiff's second amended complaint. (ECF No. 132.) Plaintiff is "a life-long (born and raised) Hindu . . . and one of his core and sincerely held religious beliefs is not to consume or come in close personal contact with beef and pork food products." (2d Am. Compl. at 8 ¶ 2(b).) Plaintiff alleges that DOCCS is "aware of [Plaintiff's] Hindu faith and DOCCS records reflect [Plaintiff's] faith (Hindu) since the start of his incarceration." (*Id.*)

Plaintiff further asserts that prior to April 2019, DOCCS's laundry policy permitted him to "wash (wash/dry) his clothes with no personal contact with other

inmates' clothes." (*Id.* at 9 ¶ 2(c).) In April 2019, DOCCS changed its laundry policy such that "at least 2 inmates' clothes (minimum) must be washed together in close personal contact." (*Id.*) Believing that the new laundry policy violated his core and sincerely held religious beliefs, Plaintiff asked for an exception—both "informally verbally and formally in writing"—to wash his clothes consistent with the prior laundry policy that did not launder clothes with the clothes of other inmates. (*Id.* at 9 ¶ 2(d).)

Plaintiff alleges that the three correctional facilities at which he was housed— Gowanda, Fishkill, and Collins—denied his request and, as a result, Plaintiff "was forced to either hand wash his clothes, go long periods without washing his clothes, or violate his religious beliefs (that his clothes may not come into close contact with beef or pork) whenever he used (was forced to use with no viable humane options) the laundry facilities." (*Id.*) He contends that for "almost 4 years, [Plaintiff] was unable to enjoy a healthful environment, and was constantly subjected to dirty, unhealthy, soiled and smelly clothes, as he was deprived/unable to use DOCCS laundry facilities." (*Id.* at 25 ¶ 5(b).) He alleges that he was therefore forced "many times to violate his core and sincerely held religious beliefs," which created a "substantial burden." (*Id.*) Plaintiff asserts that Defendants did not grant him the exception "deliberately and intentionally, in a conspiracy to deny civil rights." (*Id.*)

Plaintiff alleges that he exhausted all administrative remedies "per DOCCS Grievance process (DOCCS Directive #4040)" because he "filed a grievance (denied),

filed an appeal with the Superintendent (denied)[,] and appealed to the CORC[4] (denied)," thus "making him compliant with the PLRA[5]." (*Id*. at 10 ¶ 2(e).) Plaintiff asserts that "as DOCCS laundry policy was across all prisons, [Plaintiff] did not file separate grievances at Fishkill CF and Collins CF, but he spoke and wrote to Defendants to ask for relief which was denied." (*Id*. at 10–11 ¶ 2(e).)

Plaintiff further alleges that all Defendants "were personally involved in directly denying [Plaintiff] any relief (from the laundry policy), and were aware (personally both verbally and in writing on multiple occasions), had the direct authority and responsibility to provide relief, but denied any relief, while hiding behind procedures, rules and regulations, and also engaged in conspiracy." (*Id*. at 11 ¶ 2(f).) He also alleges that, apart from DOCCS, all Defendants were involved in their official capacity. (*Id*.) He alleges that Defendants at each facility met as a group, conferred, had discussions with DOCCS Albany Ministerial Services, and denied him relief. (*Id*.)

Plaintiff asserts almost identical factual allegations concerning "Gowanda CF Defendants (Lockwood, Harris, Kickbush, [Schneider])," "Fishkill CF Defendants (Dash, Frost, Burnett)," and "Collins CF Defendants (Terragnoli, Moffit, Latona) (*Id*. at 22–23 ¶ 4(b), (c), (d).) Specifically, he alleges that each group of Defendants "met, conferred, decided, and denied any relief to petitioner, on multiple occasions,"

---

[4] "CORC" is an acronym for Central Office Review Committee.

[5] "PLRA" is an acronym for the Prison Litigation Reform Act.

"individually and collectively conferred with DOCCS Officials in Albany[6], and met with [Plaintiff] on multiple occasions to deny relief," and "knowingly, willingly, and under false pretexts [ ] derided and ridiculed [Plaintiff]" about "his Hinduism beliefs." (*Id.*) Plaintiff further alleges that Defendants gave religious exemptions to "Muslims/Jews" by providing a "Pork free menu and kitchen . . . but because [Plaintiff] is 1 Hindu, exceptions cannot be made." (*Id.*)

Lastly, Plaintiff alleges that he "personally met and wrote to all Defendants (except Fernandez at DOCCS, whom he only wrote to) at Gowanda CF (where he was based till 1/21/2021), Fishkill CF (where he was based from 1/21/2021 to 10/19/2021) and Collins CF (where he was based from 10/19/2021 to 11/22/2022)." (*Id.* at 12 ¶ 2(f).)

DOCCS released Plaintiff in November 2022 after he successfully moved to vacate under New York State Criminal Procedure Law § 440.10. *See Tripathy v. Brotz*, No. 6:22-cv-6469-FPG, 2023 WL 4032831, at *1 (W.D.N.Y. June 15, 2023).

## LEGAL STANDARD

### *Rule 12(b)(6)*

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in

---

[6] With respect to his allegations against the Fishkill and Collins Defendants, Plaintiff adds "(including Defendant Fernandez)" after the word "Albany." (*Id.* ¶ 4(b) and (c).)

the complaint."[7] *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trustees of the Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016) (citation omitted). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations, alterations and citations omitted). "To state a plausible claim,

---

[7] Given his *pro se* status, the Court will also consider Plaintiff's response to Defendants' motion to dismiss (ECF No. 139) under the same 12(b)(6) standard. *See Pflaum v. Town of Stuyvesant*, 937 F. Supp. 2d 289, 300 (N.D.N.Y. 2013) (citation omitted) ("[A] *pro se* plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of his complaint—to the extent those papers are consistent with the allegations in the complaint."); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (collecting district court cases) ("[I]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they are consistent with the allegations in the complaint.") (internal quotation marks omitted); *see also Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir. 1987) (considering allegations in *pro se* plaintiff's opposition to motion to dismiss).

the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

In addition, "[i]t is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotation marks and citation omitted); *see also McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) ("[W]hen the plaintiff proceeds *pro se* . . . a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations."). "[A] *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984). "Even in a *pro se* case, however, 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)). A court may not "invent factual allegations that [a plaintiff] has not pled." *Chavis*, 618 F.3d at 170.

**DISCUSSION**

*Exhaustion of Remedies[8]*

Congress enacted the PLRA in 1996 "to address the large number of prisoner complaints filed in federal court." *Walker v. Schult*, 45 F.4th 598, 611 (2d Cir. 2022) (quoting *Jones v. Bock*, 549 U.S. 199, 202 (2007)). "Among other reforms, the PLRA . . . requires prisoners to exhaust prison grievance procedures before filing suit." *Walker*, 45 F4th at 611–12 (quoting *Jones*, 549 U.S. at 202); 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The "PLRA's exhaustion requirement applies to all inmate suits about prison life . . . ." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Prisoners filing in New York State must exhaust their remedies by "follow[ing] the prescribed three-step grievance procedure set forth at 7 N.Y.C.R.R. § 701.5." *Johnson v. Annucci*, 314 F. Supp. 3d 472, 475 (W.D.N.Y. 2018).

---

[8] Defendants indicate that their "motion is a motion to dismiss the complaint on the pleadings for lack of jurisdiction over the subject matter under Rule 12(c) and Rule 12(b)(1)." (Defs.' Mem. of Law at 7, ECF No. 138-2.) In support of this argument they cite to several cases, including *Harris v. Totten*, 244 F. Supp. 2d 229, 231 (S.D.N.Y. 2003), which dismissed the plaintiff's complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction as the plaintiff failed to exhaust his administrative remedies. *Id.* at 231. However, Defendants cite to outdated case law as the Second Circuit has clearly established that the failure to exhaust administrative remedies under the PLRA is not jurisdictional. *Richardson v. Goord*, 347 F.3d 431, 433–434 (2d Cir. 2003). For this reason, the Court denies Defendants' motion to dismiss the complaint under Rule 12(b)(1).

Failure to exhaust administrative remedies "is an affirmative defense under the PLRA." *Walker*, 45 F.4th at 612 (quoting *Jones*, 549 U.S. at 216). "[A] prisoner need not specifically plead or demonstrate exhaustion in the complaint because 'failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement.'" *Rucker v. Giffen*, 997 F.3d 88, 92 (2d Cir. 2021) (quoting *Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). As an affirmative defense, the defendants bear the burden "of showing that a prisoner failed to satisfy the exhaustion requirements" before the burden shifts to the plaintiff. *Thomas v. Waugh*, No. 913CV0321MADTWD, 2018 WL 3121622, at *10 (N.D.N.Y. Feb. 28, 2018), *report and recommendation adopted*, No. 9:13-CV-00321, 2018 WL 1508563 (N.D.N.Y. Mar. 27, 2018).

Once the burden shifts, the plaintiff may try to invoke an exception to the exhaustion requirement by showing that administrative remedies were "unavailable to him." *Id.* The PLRA requires exhaustion only insofar as the exhaustion is "available to the inmate." *Green Haven Prison Preparative Meeting v. DOCCS*, 16 F.4th 67, 81 (2d Cir. 2021) (citation omitted), *cert. denied* 142 S. Ct. 2676 (May 2, 2022). But "[t]he bar for the availability of remedies . . . is low. To constitute an 'available' remedy, a process requires only 'the possibility of some relief.'" *Id.* (quoting *Ross v. Blake*, 578 U.S. 632, 643 (2016)). Dismissal is appropriate "when it is apparent from the face of the complaint" that the prisoner "failed to exhaust administrative remedies." *Allah v. Adams*, 573 F. Supp. 3d 904, 910 (W.D.N.Y. 2021), *cert. denied* 143 S. Ct. 433 (Nov. 14, 2022) (citation omitted); *see also Williams,* 829 F.3d at 122

("[A] district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement.") (citation omitted).

Defendants assert that the Court must dismiss Plaintiff's § 1983 and § 1985 claims against the Fishkill and Collins Defendants because he failed to exhaust his administrative remedies as required by 7 NYCRR § 701 and, therefore, his claims are barred by the PLRA. (Brown Decl. ¶¶ 17, 25, ECF No. 138-1.)

Plaintiff concedes he "did not file separate grievances at Fishkill CF and Collins CF." (2d Am. Compl. at 10 ¶ 2(e).) He makes two arguments against the need to file such grievances. First, he argues that the "DOCCS-wide" laundry policy rendered filing grievances at these facilities futile (*Id.* at 11 ¶ 2(f).) Second, even if he needed to file grievances at these facilities, Plaintiff argues that he satisfied the PLRA's requirement by speaking with and writing to the Fishkill and Collins Defendants on the matter. (*Id.* at 10 ¶ 2(e).)

Plaintiff first alleges that filing "separate grievances at Fishkill CF and Collins CF[ ] would have been futile and a dead-end, as the laundry policy was state-wide." (Pl's Resp. at 17 ¶ 1, Mar. 27, 2023, ECF No. 139.) To invoke the futility exception to exhaustion of remedies, the challenged policy must be "unavailable." *Ross*, 578 U.S. at 643. For example, if the policy is "outside the control of the jail," the claim is "not grievable." *Saeli v. Chautauqua Cnty., NY*, 36 F.4th 445, 457–58 (2d Cir. 2022). But facilities may—and often do—retain local control over the implementation of state-wide policies. Here, Plaintiff's exhibits indicate he only grieved *Gowanda's* laundry

policy. (*See, e.g.*, Pl's Ex. 4 at 5, 13, ECF No. 139-4.) His challenge is based on a Gowanda-specific memorandum (*Id.* at 15.) CORC denied his grievance in order to "uphold[ ] the discretion of the *facility administration* to promulgate local policy and procedures." (*Id.* at 1 (emphasis added).) His allegations thus indicate that the laundry policy was not "outside the control" of each prison facility. *Saeli*, 36 F.4th at 457. As a result, the futility exception does not apply.

Second, even if he needed to grieve the laundry policy at Fishkill and Collins, Plaintiff alleges that he exhausted his remedies there because he "reached out extensively" to Fishkill and Collins Defendants "via letters, meetings and communications of all [g]rievances including CORC decisions." (Pl's Resp. at 18 ¶ 1.) But exhaustion is not satisfied through enough informal steps like letters and communications. *See Dabney v. Pegano*, 604 F. App'x 1, 5 (2d Cir. 2015) (summary order); *see, e.g.*, *Girard v. Chuttey*, 826 F. App'x 41, 45 (2d Cir. 2020) (summary order) (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006); *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) (holding that "letters to prison officials did not constitute exhaustion" because "they did not conform to the agency's grievance procedures")). This District has consistently held that "complaints that were not filed as formal grievances cannot satisfy the exhaustion requirement." *Collins v. Goodliff*, No. 12-CV-6595-FPG, 2014 WL 6065670, at *2 (W.D.N.Y. Nov. 13, 2014) (collecting cases). Plaintiff was required to exhaust the formal grievance procedure pursuant to 7 N.Y.C.R.R. § 701.5. at the Fishkill and Collins facilities.

To satisfy the PLRA's exhaustion requirement, Plaintiff was required to file formal grievances challenging the laundry policy at each facility. He "did not file separate grievances at Fishkill CF and Collins CF." (2d Am. Compl. at 10 ¶ 2(e).) Therefore, the Court dismisses Plaintiff's claims against the Fishkill and Collins Defendants for failure to exhaust administrative remedies. As Defendants did not raise a failure to exhaust with respect to Fernandez, the Court will analyze Plaintiff's claims against the Gowanda Defendants and Fernandez below.

### *Eleventh Amendment Immunity*

Defendants assert that the Court should dismiss Plaintiff's claims against DOCCS and the individual Defendants in their official capacities under the Eleventh Amendment, which provides that the State is entitled to sovereign immunity. (Brown Decl. ¶ 27.) Defendants further assert that DOCCS is an agency of the State and a "lawsuit against a state employee in their official capacity it a lawsuit against the State itself." (*Id*. ¶¶ 26, 27.) In addition, Defendants contend that the Court should dismiss the § 1983 and § 1985 claims against DOCCS because only "persons" can be sued under them and DOCCS is not a person. (*Id*. ¶ 28.)

The Eleventh Amendment bars lawsuits by citizens against a state unless the state has waived this immunity. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67–68 (1996) ("[A]lthough a case may arise under the Constitution and laws of the United States, the judicial power does not extend to it if the suit is sought to be prosecuted against a State, without her consent, by one of her own citizens."). This immunity extends to state agencies, like DOCCS, and state agents in their official

capacities. *See Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) ("[T]he dismissal of [the plaintiff]'s claims against . . . [DOCCS] . . . is affirmed, because these claims are barred by the Eleventh Amendment."); *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) (explaining that the Eleventh Amendment protects prison officials from suits for damages in their official capacity but not in their personal capacity).

Here, there is no allegation that the State waived its sovereign immunity. As a result, Plaintiff cannot bring claims against Defendants in their official capacities. *See Guarneri v. West*, 518 F. Supp. 2d 514, 519 (W.D.N.Y. 2007) ("To the extent that plaintiff's claims are asserted against defendants in their official capacities, the claims are barred by the Eleventh Amendment and must be dismissed. The Eleventh Amendment bars lawsuits by citizens against a state unless the state has waived its sovereign immunity.") (citation omitted).

The Court grants Defendants' motion to dismiss with respect to Plaintiff's claims against DOCCS and the Gowanda Defendants and Fernandez in their official capacities.

### RLUIPA Claim

RLUIPA[9] protects prisoners from a "government" imposed substantial burden on their religious exercise. 42 U.S.C. § 2000cc-1(a). "Government" under RLUIPA means any "State, county, municipality, or other governmental entity created under the authority of a State[,]" along with subdivisions thereof and those "acting under

---

[9] 42 U.S.C. § 2000cc *et seq.*

color of State law[.]" 42 U.S.C. §§ 2000cc-5(4)(A)(i)–(iii). RLUIPA "invok[es] federal authority under the Spending and Commerce Clauses." *Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005). Under the Spending Clause basis, RLUIPA applies if "the substantial burden is imposed in a program or activity that receives Federal financial assistance." 42 U.S.C. § 2000cc-1(b)(1). Under the Commerce Clause basis, RLUIPA applies if "the substantial burden affects, or removal of that substantial burden would affect" interstate commerce. *Id.* § 2000cc-1(b)(2). Prisoners affected in either situation may obtain "appropriate relief against a government." *Id.* § 2000cc-2(a).

To state a claim under RLUIPA, "a plaintiff must demonstrate that the state has imposed a substantial burden on the exercise of his religion; however, the state may overcome a RLUIPA claim by demonstrating that the challenged policy or action furthered a compelling governmental interest and was the least restrictive means of furthering that interest." *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010) (discussing 42 U.S.C. § 2000cc-1(a)). Under RLUIPA's Spending Clause basis, the Second Circuit "does not authorize claims for monetary damages against state officers in either their official or individual capacities." *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014) (citing *Washington v. Gonyea*, 731 F.3d 143, 145–46 (2013).[10] As a result, a prisoner can only recover damages under RLUIPA's Commerce Clause basis.

---

[10] The Second Circuit summarized the rationale as follows:

RLUIPA was enacted pursuant to Congress' spending power, which allows the imposition of conditions, such as individual liability, only on those parties actually receiving state funds. Applying restrictions created pursuant to the *(continued)*

To recover under the Commerce Clause basis, the prisoner must allege that a government-imposed substantial burden on free exercise "affects, or removal of that substantial burden would affect," interstate commerce. 42 U.S.C. § 2000cc-1(b). A plaintiff adequately alleges a substantial burden through his assertion that the government forced him to "'choose between following the precepts of [his] religion and forfeiting benefits . . . and abandoning one of the precepts of [his] religion.'" *Westchester Day School v. Village of Mamaroneck*, 504 F.3d 338, 348 (2d Cir. 2007) (alternations added) (quoting *Sherbert v. Verner*, 374 U.S. 398, 404 (1963)). A plaintiff plausibly shows an effect on commerce by establishing an "interstate commerce nexus." *Id.* at 354 (noting that RLUIPA requires claimants to establish a jurisdictional "nexus"); *Refaat El Badrawi v. United States*, No. 07-CV-1074 (JCH), 2011 WL 13086946, at *15 (D. Conn. May 16, 2011) (applying *Westchester* to hold that RLUIPA claimants may sue officials in their individual capacities if they establish an "adequate interstate commerce nexus"). The standard for showing a nexus is "minimal." *See Westchester Day School*, 504 F.3d at 354 ("As we have recognized, the

---

Spending Clause to persons or entities other than the recipients of the federal funds at issue would have the effect of binding non-parties to the terms of the spending contract. Indeed, to decide otherwise would create liability on the basis of a law never enacted by a sovereign with the power to affect the individual rights at issue—*i.e.*, the state receiving the federal funds—and this would raise serious questions regarding whether Congress had exceeded its authority under the Spending Clause . . . RLUIPA [does] not permit a plaintiff to sue state officials in their individual capacities because the state prison, and not the state prison officials, was the contracting party, which had agreed to be amenable to suit as a condition to received funds.

*Tanvir v. Tanzin*, 894 F.3d 449, 465–466 (2d Cir. 2018) (internal quotations and citations omitted, cleaned up).

evidence need only demonstrate a minimal effect on commerce to satisfy the jurisdictional element.") (citation omitted).

In this case, Defendants contend that Plaintiff's RLUIPA claim, which Defendants characterize as injunctive relief, is moot because Plaintiff is no longer in DOCCS custody. (Brown Decl. ¶ 33.) Defendants also argue that the Court should dismiss any claim against the individuals for money damages because such damages are not available under RLUIPA. (*Id*. ¶ 34.) The Court agrees that injunctive relief is moot. But it disagrees that money damages are completely unavailable.

The Supreme Court has not yet addressed whether individual capacity suits against government officials—like DOCCS employees—are barred under RLUIPA's Commerce Claus basis. Rather, it has held that "States, in accepting *federal funding*, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver." *Sossamon v. Texas*, 563 U.S. 277, 293 (2011) (emphasis added). But *Sossamon* only addressed whether RLUIPA permitted "the recovery of money damages against a state or state officers sued in their official capacities." *Tanvir*, 894 F.3d at 464. The Supreme Court has not yet addressed whether States, by facilitating interstate commerce, consent to waive their sovereign immunity to private suits. *See Seminole Tribe*, 517 U.S. at 72 (limiting its holding to private suits against nonconsenting States).

The Supreme Court affirmed the Second Circuit's holding in *Tanzin v. Tanvir*, 592 U.S. 43 (2020), that the Religious Freedom Restoration Act of 1993 ("RFRA")

authorized individual capacity suits against state officials. As RFRA's "sister statute," RLUIPA permits individual capacity suits for money damages. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 730 (2014). The Supreme Court explained that RFRA permits individual capacity suits against government officials because RFRA expanded the term "government" beyond its plain meaning "to include 'a branch, department, agency, instrumentality, and *official (or other person acting under the color of law)* of the United States.'" *Tanzin*, 592 U.S. at 47 (quoting 42 U.S.C § 2000bb–2(1) (emphasis added)). Like RFRA, RLUIPA defines "government" as "a State, county, municipal entity created under the authority of a State; any branch, department, agency, instrumentality, or official of an entity [thereof]; and *any other person acting under the color of State law*," 42 U.S.C. §§ 2000cc-5(4)(A)(i)–(iii) (emphasis added). The plain language of RFRA and RLUIPA authorizes individual capacity suits against State officials.

As DOCCS employees, the Gowanda Defendants and Fernandez fall within the scope of RLUIPA as "person[s] acting under the color of State law." *Id.*; *see also Pierre v DOCCS*, No. 21-CV-163-LJV, 2021 WL 11605447, at *4 (W.D.N.Y. Sept. 29, 2021) (noting that "DOCCS is an agency of New York State"). RFRA's use of the phrase "persons acting under the color of law" is drawn from Section 1983. *Tanzin*, 592 U.S. at 490 (citation omitted). "Because RFRA uses the same terminology as § 1983 in the very same field of civil rights law, 'it is reasonable to believe that the terminology bears a consistent meaning.'" *Id.* at 491 (quoting SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 323 (2012)). Similarly, RLUIPA uses the same

phrase "under the color of State law" in the context of civil rights, also drawing from § 1983. *See* 42 U.S.C. §§ 2000cc-5(4)(A)(iii). Defendants not only fall under the scope of RLUIPA based on its plain language, but also based on the nature of an individual capacity claim, for "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Plaintiff's individual capacity claim against the Gowanda Defendants and Fernandez, therefore, falls within the scope of the RULIPA's Commerce Clause basis.

Plaintiff states a claim for relief under the Commerce Clause basis by adequately alleging that Gowanda's laundry policy substantially burdened him and affected interstate commerce. Because Defendants allegedly denied him a religious accommodation to the laundry policy, Plaintiff was "forced to wash his cloths in DOCCS's laundry in violation of his core and sincerely held religious beliefs" or "not wash them for long periods of time." (Pl's Resp. at 16, 24.) He developed "skin infections, rashes, severe itching." (*Id.* at 24 ¶ 6.) He needed money for "soap" to hand wash his clothes and "new clothes." (*Id.*) As a result, "his family and friends . . . not based in NY," including "family based in India," sent him "extra money[ ] and items across state lines, thus impacting inter-state commerce." (*Id.*) Drawing all inferences in favor of Plaintiff, these allegations plausibly establish a substantial burden. The laundry policy forced him to make an unconditional choice—he could follow his Hindu religion and forfeit the benefit of prison-washed clothes or he could abandon the Hindu precept mandating that he avoid contact with beef or pork, a prohibition that

he alleges he sincerely believed encompassed washing his clothes with the clothes of inmates who may have consumed such products. Plaintiff also plausibly establishes an "interstate commerce nexus" by alleging that his family sent him new clothes and soap across state lines as a result of Defendants' laundry policy.

Defendants did not address RLUIPA's Commerce Clause basis but instead cite *Holland v. Goord*, 758 F.3d 215 (2d Cir. 2014), for the proposition that the Second Circuit bars *all* individual capacity claims for damages under RLUIPA. (Defs.' Mem. of Law at 18.)[11] But *Holland* relied on *Gonyea* to deny a claim for damages in the individual capacity under RLUIPA. *Holland*, 758 F.3d at 224 (citing *Gonyea*, 731 F.3d at 145–46). *Gonyea* explicitly denied damages under RLUIPA "because the legislation was enacted pursuant to Congress' spending power . . . ." *Gonyea*, 731 F.3d at 145 (citing 42 U.S.C. § 2000cc–1(b)(1) (collecting cases in other circuits). Since the Second Circuit only addressed RLUIPA's Spending Clause basis in *Holland* and *Gonyea*, Defendants' legal argument is insufficient to preclude claims for damages against officials in their individual capacity under RLUIPA's Commerce Clause basis.

---

[11] In his second amended complaint, Plaintiff only mentions RLUIPA's Commerce Clause basis in passing and fails to provide factual allegations to support the claim. (2d Am. Compl. at 19.) But he bolsters the claim by alleging facts in his Response. (Pl's Resp. at 16, 24.) Defendants addressed the claim in their reply. (Defs.' Reply Mem. of Law at 7, ECF No. 140.) Given Plaintiff's *pro se* status, the Court construes his response as providing notice of the claim to Defendants. The Court construes Defendants' reply as an opportunity to respond. Therefore, the Court rules dispositively on the claim now. *See* Fed. R. Civ. P. 15 (a)(2) (authorizing courts to grant leave to amend "when justice so requires); *see also id.* at 8(e) ("Pleadings must be construed so as to do justice.").

Based upon the forgoing, the Court grants Defendants' motion to dismiss with respect to Plaintiff's RLUIPA claim under the Spending Clause basis. The Court denies Defendants' motion with respect to Plaintiff's RLUIPA claim under the Commerce Clause basis as to the Gowanda Defendants and Fernandez.

### Section 1983 Claims (First Amendment)

"Under 42 U.S.C. § 1983, '[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' is 'liable to the party injured.'" *Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) (quoting 42 U.S.C. § 1983)). "To state a valid claim under 42 U.S.C. § 1983, a plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875–76 (2d Cir. 1994)). To establish § 1983 liability against a state official, a plaintiff must plead the "prerequisite" of personal involvement. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quotation omitted). Pleading liability under the theory of *respondeat superior* is insufficient. *Iqbal¸* 556 U.S. at 663, 676 ("vicarious liability is inapplicable to . . . § 1983 suits."). Rather, a "plaintiff must plead and prove that 'each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (quoting *Iqbal*,

556 U.S. at 676). A plaintiff demonstrates personal involvement in one of the following ways:

> (1) [A]ctual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

*Wells v. McKoy*, No. 1:16-CV-00113 EAW, 2018 WL 6833665, at *5 (W.D.N.Y. Dec. 27, 2018) (citing *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003)).

Defendants assert that the Court should dismiss the § 1983 claim because Plaintiff did not allege the "personal involvement of any specific Defendant." (Brown Decl. ¶ 35.) The Court disagrees. While Plaintiff may not have inadequately alleged personal involvement initially in his second amended complaint, he successfully supplemented the allegations in his Response. Given Plaintiff's *pro se* status, the Court will consider the factual allegations in his response "to the extent" they are "consistent with the allegations" in his second amended complaint. *See Pflaum*, 937 F. Supp. at 300 (N.D.N.Y. 2013) (citation omitted) (considering consistent, additional facts pleaded in a *pro se* plaintiff's response).

### *Personal Involvement of the Gowanda Defendants and Fernandez*

### Lockwood

Plaintiff alleges that "Gowanda CF Defendants met, conferred, and made decision together while directly denying [Plaintiff] relief, while they colluded, along with extensive discussions with DOCCS Albany Ministerial Services." (2d Am.

Compl. at 11, ¶ 2(f).) He additionally alleges that, after the "laundry policy was changed at Gowanda . . . Lockwood is on record to not only confer with DOCCS Albany but also get approval . . . via documents/communications . . . ." (Pl.'s Resp. at 19 ¶ 2.) He also alleges that Lockwood "directly oversaw, ran and implemented the laundry policy [at Gowanda], and despite [Plaintiff's requests] (letters, meetings, and all Grievances communications) denied any relief" and that Lockwood asked his Sergeant "to intimidate and threaten" him "on many occasions" (*Id.* at 22 ¶ 3.) The Court notes that Plaintiff's allegations are somewhat ambiguous because he lists these facts with respect to a group: "Lockwood, Frost, and Moffit." (*Id.*) But based on the liberal construction afforded to *pro se* plaintiffs, the Court finds Plaintiff has adequately alleged personal involvement of Defendant Lockwood at this stage of the litigation.

### Harris

Plaintiff alleges that "Gowanda CF Defendants met, conferred, and made decision together while directly denying [Plaintiff] relief, while they colluded, along with extensive discussions with DOCCS Albany Ministerial Services." (2d Am. Compl. at 11, ¶ 2(f).) He additionally alleges that "Coordinating Chaplain[] Harris . . . [is] tasked and responsible for all religions at [Gowanda]" and that he was "responsible to understand [Plaintiff's] request." (Pl.'s Resp. at 20 ¶ 3.) He also alleges that Harris responded by "email" to his requests for relief "via letters, meetings, and all Grievance communications" but ultimately "formally denied relief." (*Id.*) Plaintiff alleges that denial of relief occurred without asking for an expert opinion on the

Hindu religion and despite that "Chaplains have the power to not only recommend religious based exemptions but also the power to get them implemented." (*Id.*) As with Lockwood, the Court notes that Plaintiff's allegations are somewhat ambiguous because he lists these facts with respect to a group: "Chaplains Harris, Dash, and Terragnoli." (*Id.*) But based on the liberal construction afforded to *pro se* plaintiffs, the Court finds Plaintiff has adequately alleged personal involvement of Defendant Harris.

### Kickbush & Schneider

Plaintiff alleges that "Gowanda CF Defendants met, conferred, and made decision together while directly denying [Plaintiff] relief, while they colluded, along with extensive discussions with DOCCS Albany Ministerial Services." (2d Am. Compl. at 11, ¶ 2(f).) He additionally alleges that "Kickbush" and "Schneider," in their roles "as Superintendents of their facilities, were the final facility escalation point to all policies and its implementation . . . who individually denied any relief" despite that he had "meetings, sent letters, and provided all Grievance communications" to them. (Pl.'s Resp. at 22 ¶ 3.) He further alleges that Kickbush and Schneider "had the power, had the understanding of how the new laundry policy impacted [Plaintiff's] religious beliefs, knew about religious exemptions, but still knowingly and deliberately denied relief." (*Id.*) Despite again asserting these allegations towards a group, the Court finds that Plaintiff has adequately alleged the personal involvement of Defendants Kickbush and Schneider.

### Fernandez

Plaintiff only initially alleged that he did not meet with "Fernandez at DOCCS" but "only wrote to [her]." (2d Am. Compl. at 10 ¶ 2(f).) In his Response, Plaintiff additionally alleges that "Fernandez," in her role "as the lead religious affairs coordinator at DOCCS Albany," was "tasked with not only understanding [Plaintiff's] concerns but also engaging with respective facilities and experts to provide any exemptions." (Pl.'s Resp. at 23 ¶ 3.) He alleges that Fernandez "advised CORC to deny any relief in the laundry case." (*Id.* at 19 ¶ 2.) He alleges that she "had personal involvement (via letters, grievances, meetings), personally knew about the [laundry issue] . . . had the power to provide relief, but deliberately ignored and denied any relief . . . ." (*Id.* at 21 ¶ 2.) Later, Plaintiff reiterates that Fernandez "directly confer[red] and recommend[ed] to the CORC to deny [Plaintiff] any relief" and that she "also knew 100% the numerous religious accommodations provided to Muslims/Jews due to religious proximity with pork." (*Id.* at 23 ¶ 3). The Court finds that these allegations adequately demonstrate the personal involvement of Defendant Fernandez.

Plaintiff adequately alleged the personal involvement of the Gowanda Defendants and Fernandez. Therefore, the Court will analyze the merits of Plaintiff's First Amendment claim under 42 U.S.C. § 1983 below.

### *Merits of Plaintiff's § 1983 claim.*

Prisoners "retain" free exercise rights under the First Amendment. *Kravitz*, 87 F.4th at 119 (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)). To

evaluate a prisoner's § 1983 free exercise claim against prison officials, courts apply "a reasonableness test" that is "less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *See id.* (quoting *O'Lone*, 482 U.S. at 349) (internal quotation marks omitted). "In the prison context . . . 'the right to free exercise of religion' is balanced against 'the interests of prison officials charged with complex duties arising from administration of the penal system.'" *Id.* at 128 (quoting *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990).

Section 1983 free exercise claims require courts to conduct a threefold analysis. First, "a prisoner 'must show at the threshold that the disputed conduct substantially burdens[12] his sincerely held religious beliefs.'" *Lightner v. Wenderlich*, 271 F. Supp. 3d 445, 453 (W.D.N.Y. 2017) (quoting *Hall v. Ekpe*, 408 F. App'x 385, 388 (2d Cir. 2010)). In evaluating an alleged substantial burden, courts inquire into the "centrality" of the belief within the religion at issue. *See Ford v. McGinnis*, 352 F.3d 582, 593 (2d Cir. 2003). "Courts are particularly ill-suited" for this task:

---

[12] The Second Circuit has "not decided whether the substantial burden test survives *Employment Division v. Smith*, 494 U.S. 872 (1990)." *Wiggins v. Griffin*, 86 F.4th 987, 993 (2d Cir. 2023); *see also Holland*, 758 F.3d at 220 ("It has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.") (citation omitted). In *Holland*, "[t]he Second Circuit chose not to . . . alter the previous assumption that the substantial burden test is a threshold question." *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 586 n.9 (S.D.N.Y. 2015). Accordingly, this Court will follow the analysis of *Holland*, "assuming that the substantial burden test is still valid." *Id.* (quoting *Weathers v. Rock*, No. 9:12-CV-1301 NAM/ATB, 2014 WL 4810309, at *4 (N.D.N.Y. Sept. 23, 2014).

"distinguish[ing] important from unimportant religious beliefs." *Id.* Accordingly, the

Second Circuit has "been appropriately wary of making 'conclusory judgments about

the unimportance of the religious practice to the adherent.'" *Brandon v. Kinter*, 938

F.3d 21, 32 (2d Cir. 2019) (quoting *Ford*, 352 F.3d 582, 593). "[T]he substantial burden

requirement presupposes that 'there will be cases in which it comfortably could be

said that a belief or practice is so peripheral to the plaintiff's religion that any burden

can be aptly characterized as constitutionally de minimis.'" *Id.* (quoting *Ford*, 352

F.3d 582, 593). However, "establishing a substantial burden is 'not a particularly

onerous task.'" *Id.* (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 202 (2d Cir. 2004)).

Second, if the inmate plausibly alleges a substantial burden, the "defendants

then bear the relatively limited burden of identifying the legitimate penological

interests that justify the impinging conduct." *Lightner*, 271 F. Supp. 3d at 453

(W.D.N.Y. 2017) (quoting *Hall v. Ekpe*, 408 F. App'x 385, 388 (2d Cir. 2010); *see also*

*O'Lone*, 482 U.S. at 349 (holding that infringement of an inmate's free exercise rights

is conditionally permissible to the extent that such infringement is "reasonably

related to pedagogical interests"). Courts use the *Turner*[13] factors to determine

whether the defendants meet that standard:

> (1) whether there is a rational relationship between the regulation and
> the legitimate government interests asserted; (2) whether the inmates
> have alternative means to exercise the right; (3) the impact that
> accommodation of the right will have on the prison system; and

---

[13] *Turner v. Safley*, 482 U.S. 78, 89–90 (1987).

(4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest.

*Lightner*, 271 F. Supp. 3d at 45 (W.D.N.Y. 2017) (cleaned up and citation omitted). Third, the burden shifts back to the inmate to show that the articulated concerns by the defendants are "irrational." *Hall*, 408 F. App'x at 388 (citing *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006)); *see also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (noting that the burden "is not on the State to prove the validity of prison regulations but on the prisoner to disprove it").

In this case, it appears there is no precedent stating that a laundry-based injury like the one Plaintiff alleges is merely *de minimis*. *Brandon*, 938 F.3d at 32. Even after extensive research, the Court could not find even one applicable case discussing whether a laundry policy was a substantial burden on an inmate whose religion required him to avoid contact with particular food products. *See Lopez v. Cipolini*, 136 F. Supp. 3d 570, 588 (S.D.N.Y. 2015) (collecting cases on whether "preclusion from attending two religious services" was a substantial burden); *Lloyd v. City of New York*, 43 F. Supp. 3d 254, 263 (S.D.N.Y. 2014) (collecting cases on whether providing allegedly inadequate and inappropriate space for worship services was a substantial burden). While there is precedent on whether prisons must accommodate a religiously sanctioned diet, *DeJesus v. Bradt*, 174 F. Supp. 3d 777, 785 (W.D.N.Y. 2016) (collecting cases), there is little or no precedent on whether prisons must accommodate a religiously sanctioned laundry service.

Plaintiff has adequately alleged a substantial burden by demonstrating that his beliefs were sincerely held and central to his Hindu faith. He alleges that, as Hindu, "one of his core and sincerely held religious beliefs is not to consume or come in close personal contact with beef and pork food products." (2d Am. Compl. at 8 ¶ 2(b).) While the former DOCCS laundry policy permitted Plaintiff to "wash (wash/dry) his clothes with no personal contact with other inmates' clothes," the new laundry policy after April 2019 required that "at least 2 inmates' clothes (minimum) must be washed together in close personal contact." (*Id*. at 9 ¶ 2(c).) These allegations indicate that Plaintiff's belief—Hinduism required contactless clothes washing to avoid the clothes of inmates who might have eaten beef or pork—was "sincerely held" in his "own scheme of things, religious." *Ford*, 352 U.S. 582 at 588 (quoting *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002)).

In addition, Plaintiff's sincere belief is arguably central to Hinduism, at least to the extent that "contact" with beef and pork pertains to consumption. *See Agrawal v. Keim*, No. CIV. 06-945-GPM, 2009 WL 309990, at *2 (S.D. Ill. Feb. 9, 2009) ("Observant Hindus who do eat meat almost always abstain from beef."); *see also* Mathieu Ferry, *What's India's Beef With Meat? Hindu Orthopraxis and Food Transition in India Since the 1980s*, 35 SOCIO. F. 514 (2020) ("The consumption of pork renders eaters particularly impure and beef all the more so because cow is a sacred animal."); Aditya Kiran Kakati, *For the Love of Pork, in* ODYSSEYS OF PLATES AND PALATES: FOOD, SOCIETY AND SOCIALITY 115 (Magliveras & Callin, eds. 2015) ("Indian Hindu societies do not usually eat beef or pork and its consumption has come

to be associated with tribal societies. Food restrictions are often governed by ideas of purity and impurity . . . ."). As courts are "particularly ill-suited" to determine which beliefs are important or unimportant, the Court finds that Plaintiff has alleged a rights violation based on a central Hindu tenet, despite that the Court could only confirm that Hinduism prohibits "contact" with pork and beef to the extent that such products are "consumed."

Plaintiff adequately alleges that his sincere religious belief was substantially burdened. (Pl's Resp. at 19 ¶ 2 ("[T]he impact of the changed laundry policy created a substantial burden.").) After being denied a religious accommodation, Plaintiff alleges that "he was constantly subjected to dirty, unhealthy, soiled and smelly clothes, as he was deprived/unable to use DOCCS laundry facilities." (2d Am. Compl. at 25 ¶ 5(b)) and "forced to wash his cloths in the DOCCS laundry in violation of his core and sincerely held religious beliefs" or "not wash them for long periods of time," (Pl.'s Resp. at 16, 24.) He developed "skin infections, rashes, severe itching" as a result (*Id.* at 24 ¶ 6.). "Reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment." *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972). At this point in the case, Plaintiff's request for an exemption may have been reasonable compared to the gravity of violating his sincere religious beliefs.

Plaintiff has adequately alleged a substantial burden. In the present motion, Defendants do not indicate what "legitimate penological interests" supported their

denial of a religious accommodation. *Lightner*, 271 F. Supp. 3d at 453.[14] However, as explained below, the Court agrees with Defendants that qualified immunity bars this claim against the Gowanda Defendants and Fernandez. Accordingly, the Court grants Defendants' motion to dismiss with respect to the First Amendment claim under 42 U.S.C. § 1983.

### Conspiracy Claims Under 42 U.S.C. § 1983 and § 1985

Both Section 1983 and 1985 conspiracy claims "require[ ] a plaintiff to plead a violation of a constitutional right." *Richard v. Fischer*, 38 F. Supp. 3d 340, 352 (W.D.N.Y. 2014), *reconsideration denied* 125 F. Supp. 3d 334 (W.D.N.Y. Sep. 3, 2015) (discussing the requirement in the Section 1985 context); *see also McCloud v. Prack*, 55 F. Supp. 3d 478, 481–82 (W.D.N.Y. 2014) (collecting cases in the Section 1983 context). Furthermore, "to state a claim for conspiracy under Section 1983, a plaintiff must allege: (1) an agreement between two or more actors (at least one a state actor); (2) to act in concert to cause an unconstitutional injury; and (3) an overt act done in furtherance of that agreement, causing damages." *Ocasio v. City of Canandaigua*, 513

---

[14] As the Southern District concluded:

> This being a motion to dismiss, Defendants have not answered, and so have not yet articulated any 'legitimate penological interest' or 'compelling state interest' that would justify the alleged "substantial burden" on Plaintiffs' sincerely held religious beliefs under the Free Exercise Clause or RLUIPA. They may yet do so, of course, but . . . Plaintiffs have satisfied their less-than onerous task of pleading that Defendants placed a substantial burden on their ability to freely exercise their religion.

*Lloyd*, 43 F. Supp. 3d at 264 (citation omitted).

F. Supp. 3d 310, 323 (W.D.N.Y. 2021) (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002)). The plaintiff "must make an 'effort to provide some details of time and place and the alleged effects of the conspiracy . . . .'" *Id.* (quoting *Ivery v. Baldauf*, 284 F. Supp. 3d 426, 439 (W.D.N.Y. 2018)). To state a Section 1985(3) conspiracy claim, a plaintiff must allege the following elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015). "The conspiracy must also be 'motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus.'" *Id.* (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)). "The Second Circuit has 'defined "class-based animus" to include discrimination based on religion.'" *Masri*, 2020 WL 1489799, at \*7 (quoting *Jews for Jesus, Inc. v. Jewish Cmty. Rels. Council of N.Y., Inc.*, 968 F.2d 286, 291 (2d Cir. 1992) (collecting cases)).

Defendants contend that these claims must be dismissed because Plaintiff has not alleged facts sufficient to plead a conspiracy claim and because they are barred by the intracorporate conspiracy doctrine. (Brown Decl. ¶ 41.) "The intracorporate conspiracy doctrine bars conspiracy claims against employees of entities such as DOCCS, when those employees are alleged to have conspired solely with each other unless, [per the personal interest exception], the employees were pursuing personal interests wholly separate and apart from the entity by whom they were employed."

*Fischer*, 38 F. Supp. 3d at 353 (cleaned up and citation omitted). "Courts in the Western District of New York apply the intracorporate conspiracy doctrine to bar inmates' conspiracy claims against DOCCS." *Id.* (collecting cases); *see also Richard v. Dignean*, 126 F. Supp. 3d 334, 338–39 (W.D.N.Y. 2015). To adequately plead the personal interest exception, a plaintiff must allege "that the individuals were pursuing personal interests wholly separate and apart from the entity," accordingly, "more is required of a plaintiff than simply alleging that the defendants were motivated by personal bias against the plaintiff." *Vega v. Artus*, 610 F. Supp. 2d 185, 205 (N.D.N.Y. 2009) (citation omitted).

In this case, Plaintiff must adequately plead that the personal interest exception applies to overcome the intracorporate conspiracy doctrine that bars his conspiracy claims against DOCCS. Given Plaintiff's *pro se* status, the Court construes his pleadings liberally. *Fischer*, 38 F. Supp. 3d at 350 (citing *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001)). Plaintiff seems to argue that the personal interest exception "applies" because Defendant "Lockwood at Gowanda CF . . . directly and personally benefitted from denial of relief" by getting an "extra bonus, promotions, and other benefits." (Pl's Resp. at 24 ¶ 5.) The Court construes these allegations as an attempt to plead the personal interest exception.

Plaintiff fails to "allege facts plausibly suggesting that each Defendant possessed an independent person purpose" apart from "personal bias." *Vega*, 610 F. Supp. 2d at 206. Plaintiff's allegations that Defendants "ridiculed" his religious beliefs *may* demonstrate personal bias. (2d Am. Compl. at 8–10 ¶¶ 4(b), (c), (d); Pl.'s

Resp. at 40 ¶ 4.) But even if they do, he fails to adequately allege that Defendants were pursuing personal interests wholly separate and apart from their scope of employment with DOCCS by denying him an accommodation to the laundry policy. *Vega*, 610 F. Supp. 2d at 205 ("[T]o allege facts plausibly suggesting that individuals were pursuing personal interests . . . more is required of a plaintiff than simply alleging that defendants were motivated by personal bias.") (quotation omitted); *Stevenson v. DOCCS*, No. 1:21-CV-355, 2022 WL 179768, at *16 (W.D.N.Y. Jan. 20, 2022) (holding that the plaintiff failed to invoke the personal interest exception by inadequately alleging that defendants' personal motivations caused the alleged rights violation). In fact, Plaintiff concedes that Defendants were not pursuing their own interests but denied him relief "as a result of implementation of [DOCCS'] laundry policy." (*Id.* at 24 ¶ 5.)

The intracorporate conspiracy doctrine bars Plaintiff's conspiracy claims because he has failed to plead the personal interest exception. In addition, Plaintiff's § 1983 claims are barred by qualified immunity, as explained below. The Court grants Defendants' motion to dismiss with respect to the conspiracy claims under 42 U.S.C. § 1983 and § 1985.

### State Law Claims

"Pursuant to Correction Law § 24, any claim against" a DOCCS officer under New York law "arising out of any act done or the failure to perform an act within the scope of the employment and in the discharge of the duties of said officers shall be brought and maintained in the court of claims as a claim against the state." *Crist v.*

*Rosenberger*, 219 A.D.3d 569, 570 (N.Y. App. Div. 2d Dep't 2023) (internal quotations and citation omitted). Accordingly, the Court lacks jurisdiction to hear Plaintiff's state law claims in this case. *See Davis v. McCready*, 283 F. Supp. 3d 108, 123–24 (S.D.N.Y. 2017) ("Courts in the Second Circuit have long held that Section 24 precludes a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions arising within the scope of their employment.") (collecting cases). Plaintiff's remedy for DOCCS's employees' conduct "lies in the Court of Claims against the State of New York, not this Court." *Est. of King ex rel. King v. Annucci*, No. 9:20CV1413 (TJM/ML), 2023 WL 6122868, at *15 (N.D.N.Y. Sept. 19, 2023).

The Court lacks jurisdiction to hear Plaintiff's state law claims. Therefore, the Court dismisses Plaintiff's state law claims without prejudice: NYS Constitution art. I, § 3 (Freedom of Worship) and NYS Constitution art. I, § 19 (Environmental Rights).

### *Emotional Injury*

Defendants allege that "[b]ecause Plaintiff alleges no physical injury regarding the laundry policy at Gowanda CF . . . the PLRA bars any compensatory damages for mental or emotional injuries and such claims should be dismissed." (Brown Decl. ¶ 45.) The Court agrees. Plaintiff only alleged a physical injury in his response. (Resp. at 41 ¶ 7). The Court cannot consider allegations that are inconsistent with a plaintiff's complaint. *Pflaum*, 937 F. Supp. 2d at 300; *see also Schenck v. United Airlines*, No. 21-CV-659-LJV, 2023 WL 2165181, at *6 n.11 (W.D.N.Y. Feb. 22, 2023)

(declining to consider a new argument raised by the *pro se* plaintiff for the first time in her response brief to defendant's motion to dismiss).

Section 1997e(e) of the PLRA states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *see also Thompson v. Carter*, 284 F.3d 411, 417 (2d Cir. 2002) (explaining Section 1997e(e) bars a plaintiff alleging a constitutional violation from recovering damages for mental or emotional injury without showing an actual physical injury). The purpose of this requirement is "to weed out frivolous claims where only emotional injuries are alleged." *Cox v. Malone*, 199 F.Supp.2d 135, 140 (S.D.N.Y.2002) *aff'd*, 56 F. App'x 43 (2d Cir. 2003).

Plaintiff did not allege physical injury in his second amended complaint. As a result, he is barred from recovering non-pecuniary damages under the PLRA. The Court dismisses Plaintiff's claims for mental and emotional injuries.

### *Qualified Immunity*

Defendants raise the affirmative defense of qualified immunity asserting that the Court should dismiss Plaintiff's § 1983 claims "[b]ecause it cannot be said that it was clearly established that requiring an inmate to wash laundry with other inmates' laundry violated Plaintiff's First Amendment rights." (Brown Decl. ¶ 46.)

"Qualified immunity is meant to 'provide[ ] ample protection to all but the plainly incompetent or those who knowingly violate the law.'" *Wiggins*, 86 F.4th at 994 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The doctrine protects

defendants whose conduct does not violate a "clearly established" right. *Brandon v. Kinter*, 938 F.3d 21, 39 (2019) (citation omitted). A right is "clearly established when '(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful.'" *Wiggins*, 86 F.4th at 994 (quoting *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004). Even if the court finds a clearly established right, defendants may "establish immunity by showing that reasonable persons in their position would not have understood that their conduct was within the scope of the established prohibition." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998) (citation omitted).

Courts must take care to define the right at issue particularly rather than generally. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). "The dispositive question is whether the violative nature of particular conduct is clearly established." *Id.* (internal quotations and citation omitted).

The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Accordingly, the Second Circuit has reversed district courts for construing the right at issue too narrowly. *See, e.g.*, *Wiggins*, 86 F.4th at 994–95 (reversing summary judgment because the prisoner "did not challenge the prison's use of a call-out list generally . . . [but] contested Defendants' inaction in response to his requests to be reinstated on such list."). While "a case directly on point" is not required to determine that a right

is clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 577 U.S. at 12 (quoting *al-Kidd*, 563 U.S. at 741).

Here, Plaintiff alleges that the previous "DOCCS laundry policy . . . allowed [Plaintiff] to wash . . . his clothes with no personal contact with other inmates' clothes (most of whom consume beef and pork food products)." (2d Am. Compl. at 9 ¶ 2(c).) In contrast, the later policy "mandated . . . that at least 2 inmates' clothes (minimum) must be washed together in close personal contact." (*Id.*) As this case rests on a 12(b)(6) motion, the Court takes all of Plaintiff's factual allegations as true. *Bell Atl. Corp.*, 550 U.S. at 545 (stating tenet that on a motion to dismiss against a plaintiff's complaint the court assumes "that all of the complaint's allegations are true.") But his own factual allegations contradict the claim that his clothes risked touching the clothes of individuals who had consumed pork because DOCCS had "removed Pork food products" from the inmate "menu" based on Muslim and Jewish "religious concerns of proximity to Pork." (2d Am. Compl. at 13 ¶ 2(g).) The Court defines the right at issue per Plaintiff's own factual allegations as only implicating contact with the clothes of an inmate who might have consumed beef. *Contra Wiggins*, 86 F.4th at 995 (describing the district court's "characterization of the right at issue" as "too narrow" because "it ignore[d] the substance of Wiggins's pleas"). The right at issue, therefore, is whether the laundry policy violated Plaintiff's free exercise rights by mandating that his clothes be washed with the clothes of inmates who might have consumed beef.

Defendants retain qualified immunity because Plaintiff's allegations fail to invoke a "clearly established" right. *Wiggins*, 86 F.4th at 994. First, the law is not reasonably clear that a prisoner's First Amendment right to a religious dietary accommodation includes the right to wash his clothes separately from clothes worn by inmates who may eat food products that violate his religious beliefs.[15] Even under analogous Eighth Amendment precedent concerning the right to clean clothes, the right at issue in this case is not "established."[16] Second, neither the Supreme Court nor the Second Circuit have defined religious-based dietary accommodations broadly to include contact between clothes. To the contrary, existing precedent only requires that prisons provide inmates with "a diet sufficient to sustain the prisoner in good health without violating his religion's dietary laws." *Lightner*, 271 F. Supp. 3d at 454 (alteration omitted) (quoting *Abdul–Malik v. Goord*, No. 96 CIV. 1021 (DLC), 1997

---

[15] Examples of more established—although not necessarily "clearly" established—freedom of religion prisoner jurisprudence include "restrictions on attending religious services or worship areas, receiving visits from religious advisors, sending and receiving religious mail, changing one's name or diet for religious reasons, refusing to receive medical treatment for religious reasons, and wearing special religious attire." COLUM. HUM. RTS. L. REV., A JAILHOUSE LAWYER'S MANUAL 928 (12th ed. 2020); *id*. at 928–41 (collecting cases).

[16] Eighth Amendment jurisprudence has established that prisoners have a constitutional right to "clothing that is clean or to have an opportunity to clean it themselves." *Patterson v. City of New York*, No. 11 CIV. 7976 DLC, 2012 WL 3264354, at *8 (S.D.N.Y. Aug. 9, 2012); *see also Simmons v. Cripps,* No. 12 CIV. 1061 PAC DF, 2013 WL 1290268, at *16 (S.D.N.Y. Feb. 15, 2013), *report and recommendation adopted,* No. 12 CIV. 1061 PAC DF, 2013 WL 1285417 (S.D.N.Y. Mar. 28, 2013) ("[W]here bar soap and access to a sink is provided to pretrial detainees, as it may have been in this case, the requirements of the relevant constitutional requirements are satisfied."). Even if Tripathy had filed an Eighth Amendment claim instead of a First Amendment claim, he had the opportunity to "hand wash" his clothes and access to "soap," indicating that no rights violation occurred. (2d Am. Compl. at 9, ¶ 2(d); Pl's Resp. at 24 ¶ 6.)

WL 83402 at *1 (S.D.N.Y. Feb. 27, 1997)); *see also Brown v. Fischer*, No. 6:11-CV-6065 MAT, 2013 WL 5567503, at *4 (W.D.N.Y. Oct. 8, 2013) ("The Second Circuit has held that it is clearly established that a prisoner has a right to a diet consistent with his religious beliefs."). Third, based on the lack of applicable precedent construing religious dietary needs to include laundry separation requirements, Defendants would not have reasonably understood from the existing law that their "conduct"—denying a religious accommodation to the DOCCS laundry policy—was "unlawful." *Wiggins*, 86 F.4th at 994.

The Court holds that all remaining Defendants—the Gowanda Defendants and Fernandez—are entitled to qualified immunity with respect to Plaintiff's Section 1983 claims.[17]

## CONCLUSION

Based upon the forgoing, the undersigned:

- **GRANTS** Defendants' motion to dismiss (ECF No. 138) all claims against the Collins and Fishkill Defendants on the basis that Plaintiff did not exhaust his administrative remedies as to them;

- **GRANTS** Defendants' motion to dismiss as to DOCCS, as well as to the Gowanda Defendants and Fernandez in their official capacities under the immunity provided by the Eleventh Amendment;

---

[17] As Defendants only argued for qualified immunity with respect to Section 1983, the Court does not consider whether they are entitled to qualified immunity under Section 1985. (Defs.' Mem. of Law at 23.)

- **GRANTS** Defendants' motion to dismiss with respect to Plaintiff's RLUIPA claims under the Spending Clause basis, but **DENIES** Defendants' motion to dismiss with respect to Plaintiff's RLUIPA claim under the Commerce Clause basis as to the Gowanda Defendants and Fernandez.

- **GRANTS** Defendants' motion to dismiss with respect to Plaintiff's § 1983 claims (First Amendment);

- **GRANTS** Defendants' motion to dismiss with respect to Plaintiff's conspiracy claims under 42 U.S.C. § 1983 and § 1985;

- **GRANTS** Defendants' motion to dismiss with respect to Plaintiff's state law claims;

- **GRANTS** Defendants' motion to dismiss with respect to any assertion of emotional injury; and

- **FINDS** that the Gowanda Defendants and Fernandez are entitled to qualified immunity with respect to Plaintiff's § 1983 claims.

**IT IS SO ORDERED.**

The Clerk of the Court is directed to enter judgement in favor of Defendants Sharon Frost, Father George J. Dash, Superintendent Edward Burnett, Reverend Joel L. Terragnoli, Richard Moffit, Superintendent Leanne Latona, and DOCCS. The only claim that remains for adjudication is Plaintiff's RLUIPA claim under the Commerce Clause basis as to former Superintendent Susan R. Kickbush,

Superintendent Schneider, Reverand Harris, Captain Lockwood, and Nancy K. Fernandez, Director of Ministerial Services at DOCCS.


DATED:        March 28, 2024
              Rochester, New York

_____
MARK W. PEDERSEN
United States Magistrate Judge